## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 04-378** |
| **JOHN BAKER, ET AL.** | **SECTION "K"(5)** |

## MEMORANDUM AND ORDER

Defendant Walter Tardy ("Defendant" or "Tardy") has timely filed a Motion for Acquittal or, Alternatively, For a New Trial (Rec. Doc. 213).[1]  He alleges that he was incorrectly convicted of one count of making a false statements to FBI Special Agent Teresa Hultz.  Tardy filed his motion on October 18, 2007 (Rec. Doc. 213) ("Mot."), followed by the Government's Opposition to Tardy's motion (Rec. Doc. 215) ("Gov't Opp."), responded to by Tardy's Supplemental Memo in support of his motion (Rec. Doc. 225) ("Supp. Memo"), followed by the Government's Response to Tardy's Supplemental Memo (Rec. Doc. 227) ("Gov't Resp."), and Tardy's Sur-reply Memo (Rec. Doc. 232) ("Sur-reply").  After review of the pleadings, the Court ordered additional briefing on the issue of whether the "first semester of 2002" was defined during trial, as this time period formed the basis for Tardy's false statement conviction.  The Government filed a Second Supplemental Memo (Rec. Doc. 252) ("Second Gov't Supp."), and Tardy filed an additional response (Rec. Doc. 253) ("Second Sur-reply").

---

[1]This motion was filed on October 18, 2007, within seven working days after the verdict or discharge of the jury, which occurred on October 11, 2007.  Thus, this motion is timely under Rules 29 and 33.  Fed. R. Crim. P. 29(c)(1); Fed. R. Crim. P. 33(a)(b)(2); *see also* Fed. R. Crim. P. 45(a)(2) (excluding Saturdays, Sundays, and legal holidays from time computation where the time period is under 11 days).

## I. BACKGROUND FACTS

On September 20, 2007, Defendant Walter Tardy was charged by grand jury indictment with four crimes.  He was charged with one count of conspiracy to obtain money by fraud from the Orleans Parish Public School System ("OPPSS"), one count of obtaining or attempting to obtain by fraud money from the OPPSS, and two counts of making false statements to federal officers.  Second Superseding Indictment (Rec. Doc. 154) (hereinafter "Indictment"). The indictment generally alleged that Debra Harrison, an assistant secretary at Fannie C. Williams Middle School, an Orleans Parish public school, along with Drena Clay, a special education teacher at the same school, conspired with other teachers to bilk thousands of dollars from the Orleans Parish Public School System by falsely inflating overtime hours (called "class coverage hours") for their co-conspirator teachers.  Indictment at 4-10.  In return, Harrison and Clay would seek kickbacks from the teachers or threaten teachers by claiming that they would not receive assignments for any further overtime hours if they did not pay kickbacks to Harrison. The grand jury charged Harrison and Clay and four other teachers of participating in the conspiracy.  Tardy was allegedly one of those teachers who received inflated overtime payments and who agreed to kick back payments to Harrison.

On October 11, 2007, Tardy was acquitted of all charges, except for one count of making a false statement to a federal officer in violation of 18 U.S.C. § 1001.[2]  The indictment for the

_____

[2]In relevant part, 18 U.S.C. § 1001 states:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or juidicial branch of the Government of the United States, knowingly and willfully . . . makes any materially false, fictitious, or fraudulent statement or representation

count for which Tardy was convicted, Count 10, read as the following:[3]

> On or about the 29th of March 2004, in the Eastern District of Louisiana in a matter within the jurisdiction of the Federal Bureau of Investigation, the defendant, WALTER TARDY, did knowingly and willfully make a false, fraudulent and fictitious material statement and representation; that is, when asked by special agents of the Federal Bureau of Investigation about the alteration of the class coverage forms, TARDY stated that he never received any payment from class coverage hours in the first semester of 2002, (referring to the class coverage forms) when in truth and in fact TARDY was the recipient of fraudulent pay for inflated hours for the first semester of 2002, due to fraudulently altered class coverage forms; in violation of Title 18, United States Code, Section 1001.

Indictment at 14-15.  During trial, the following testimony was elicited by Assistant U.S.

Attorney Carter Guice from Special Agent Teresa Hultz regarding this specific charge:

> Q:  Okay.  On the March 29th of 2004, did you have an opportunity to interview Walter Tardy?
> A:  I did.
> Q:  And again, did you interview him on March 29th, 2004?
> A:  I did.
> Q:  Okay.  Would reviewing the [FBI Interview Report Form] 302's help refresh your recollection of this incident?
> A:  Yes, please.
> . . .
> Q:  Okay.  Did you ask Mr. Tardy about receiving coverage hours in the first semester of 2002?
> A:  I did.
> Q:  And what did Mr. Tardy tell you?

---

. . . shall be fined under this title, imprisoned not more than 5 years . . . ."

18 U.S.C. § 1001 (2007).  While Tardy was convicted on one count of making a false statement, Harrison and Clay were convicted of all charges.  The other three co-defendants were acquitted on all charges.

[3]Count 11, the other false statements count for which Tardy was acquitted, alleged that Tardy had told federal agents that "he did not know who altered the class coverage forms, when in truth and in fact Tardy knew who altered the forms and that he was the recipient of fraudulent pay for inflated hours due to the fraudulently altered class coverage forms and kicked back money to a co-conspirator . . . ."  Second Superseding Indictment at 15-16, Sept. 20, 2007 (Rec. Doc. 154).

**A:  Mr. Tardy stated he never received class coverage hours for - - I mean, excuse me, class coverage hours for the first semester of 2002.**
. . .
Q:  Okay.  And where was that statement made; what judicial district?
A:  The Eastern District of Louisiana.

Trial Transcript at 44-46 (Oct. 5, 2007) (emphasis added).

Defendant Tardy seeks either acquittal or a new trial for his conviction for making a false statement to a federal officer.  First, he claims that the evidence introduced by the Government was insufficient to convict him, and puts forth five grounds in support:  (1) the evidence showed that Tardy's alleged false statement "was made to only one agent, instead of two more 'agents;'" (2) the reference in the indictment that Tardy made his statement during the "first semester" of 2002 is ambiguous as it could refer to the spring semester of 2002 or the fall semester of 2002; (3) there was "no evidence that Tardy referred to class coverage forms while making the allegedly false statement;" (4) the jury found that Tardy did not receive fraudulent pay for inflated hours in any semester, and therefore he cannot be convicted of stating that he did not receive any payments for class coverage hours, (Mot. at 2-4) and (5) the Government only presented evidence that Tardy lied about receiving class coverage *hours*, while the indictment charges that he lied about receiving fraudulent *pay* for class coverage hours.

Second, Tardy claims that a conviction for false statements requires that "the defendant act with knowledge that his conduct was unlawful."  Mot. at 4.  Because Special Agent Hultz never told Tardy that lying to an FBI agent was a crime, Tardy claims that the knowledge requirement is unfulfilled.

Third, Tardy alleges that a constructive amendment or a material variance of the indictment occurred through the proof at trial based on grounds similar to those offered for his

insufficiency of the evidence claim.  Tardy alleges that (1) he made his alleged false statement to only one agent, instead of multiple "agents" of the FBI as alleged in the indictment; (2) the Government's evidence did not identify which class forms he referred to in making his false statement, where the indictment indicated that he referred to class coverage forms; (3) the evidence established that he was not "in truth and in fact" the recipient of fraudulent pay for inflated hours due to fraudulently altered class coverage forms; (4) Hultz testified that Tardy said that he did not receive class coverage hours, as opposed to fraudulent payment of class coverage hours; and (5) the reference in the indictment that Tardy referred to the "first semester" of 2002 is ambiguous as it could refer to the spring semester of 2002 or the fall semester of 2002.  Mot. 7-8.

Finally, Tardy claims that Special Agent Hultz testified falsely in stating to the jury that Tardy had given her the "wrong telephone number for the school."  Mot. at 8.  He alleges that Hultz also wrote down the wrong telephone number during statements given by Debra Harrison and Lillie Carmouche because in fact this phone number was Debra Harrison's phone number, and that Hultz purposefully claimed Tardy gave her the incorrect number.  This allegedly false testimony provided the jury with additional evidence that Tardy made the material false statements to Hultz.

The Government opposes all of the Defendant's claims.  First, the Government asserts that the evidence submitted at trial was sufficient for conviction.  They state that records from the OPPSS show that Tardy received payment for class coverage in the first semester of 2002, which is directly contradictory to his statement.  Gov't Opp. at 2.  As to the Defendant's claims regarding a constructive amendment, a material variance, and the presentation of false evidence,

the Government contends that these are properly viewed through a motion for a new trial, and as such these alleged errors are not adequate to reach the level of prejudice that is required to grant a new trial.  Gov't Opp. at 3.


## II.  ANALYSIS

A motion for acquittal and a motion for a new trial are different standards.  A motion for acquittal is governed by Rule 29, and it allows a court to enter a judgment of acquittal "of any offense for which the evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29(a).  In evaluating the sufficiency of the evidence, this Court must affirm the verdict "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict."  *United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998), *quoting United States v. Myers*, 104 F.3d 76, 78 (5th Cir. 1997).

A motion for new trial, however, is pursuant to Federal Rule of Criminal Procedure 33, and allows the Court to "weigh the evidence and consider the credibility of witnesses."  *United States v. Fuchs*, 467 F.3d 889, 910 (5th Cir. 2006).  As explained by the Fifth Circuit in *United States v. Robertson*, 110 F.3d 1113 (5th Cir. 2007):

> According to the Federal Rules of Criminal Procedure, a court on motion of a defendant may grant a new trial if required in the interest of justice.  Fed. R. Crim. P. 33.  The trial judge may weigh the evidence and may assess the credibility of the witnesses during its consideration of the motion for new trial.  No such discretion is allowed when the court decides a motion for a judgment of acquittal.  Indeed, the court must view the evidence in a light most favorable to

6

the verdict. In effect, the court assumes the truth of the evidence offered by the prosecution. Consequently, a review of a motion for new trial is reviewed under a more lenient standard than a motion for judgment of acquittal.

*Id.* at 1117 (citations omitted).  Thus, a Rule 33 motion for a new trial allows the trial judge more latitude in evaluating the quality of the evidence, but it cannot serve as a vehicle for an outright acquittal, as can a Rule 29 motion for acquittal.[4]

The Defendant's motion did not specify under which Rule of Criminal Procedure this Court should consider his claims.  As is clear from the discussion above, the distinction is critical to the standard and remedy that applies to each rule.  In reviewing the Defendant's claims, the Court finds that the text of Rule 29 and relevant case law points to the conclusion that an order of acquittal may be entered only where the evidence is insufficient to sustain a conviction. Indeed, "[t]here is only one ground for a motion for judgment of acquittal . . . that the evidence is insufficient to sustain a conviction of one or more of the offenses charged in the indictment or information."  2A Fed. Prac. & Proc. Crim. 3d § 466 (2007) (internal quotations omitted); *United States v. Hope*, 487 F.3d 224, 227 (5th Cir. 2007) ("[A]s the text of the rule, all of our case law and the relevant practice guide make clear, '[t]he only proper basis for a motion for judgment of acquittal is a challenge to the sufficiency of the government's evidence.'") (citations omitted). Therefore, this Court finds that the Rule 29 standard is the appropriate rubric for the Defendant's claims regarding the sufficiency of the evidence.  This Court will also use Rule 29 for Tardy's allegation that the knowledge requirement was not fulfilled, which is a sufficiency of the

---

[4]The Court notes that, in any case where it grants a defendant's motion for acquittal after a guilty verdict, it must also conditionally rule on whether a new trial should be granted if the judgment of acquittal is overturned and "specify the reasons for that determination."  Fed. R. Crim. P. 29(d)(1).

evidence claim as well.  As to the remainder of the defendant's claims, this Court shall apply the Rule 33 standard.

A.  Motion for Acquittal Due to Insufficient Evidence

       *1.  Lack of Knowledge by the Defendant*

The defendant claims that he should be granted an acquittal because the prosecution did not provide adequate evidence that the he acted "with knowledge that his conduct was unlawful."  Mot. at 4.  Because Agent Hultz never instructed Tardy that making false statements is a crime, he claims that the evidence convicting him was insufficient.  However, it is well-settled within this Circuit that "[t]he requirement that the false representation [under Section 1001] be made 'knowingly and willfully' is satisfied if the defendant acts deliberately and with the knowledge that the representation is false."  *United States v. Guzman*, 781 F.2d 428, 431 (5th Cir. 1986); *see United States v. Ifrah*, 161 Fed. Appx. 408, 409 (5th Cir. 2006) (unpublished opinion) (quoting *Guzman*).  The defendant's claim on this point resembles more of a ignorance-of-the-law defense, which generally is not a viable defense in the American system of criminal law.  *See Cheek v. United States*, 498 U.S. 192, 199, 111 S.Ct. 604, 610, 112 L. Ed. 2d 617 (1991) ("The general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system. . . .  Based on the notion that the law is definite and knowable, the common law presumed that every person knew the law.") (citations omitted).

In evaluating the evidence in the light most favorable to the verdict, the Rule 29 acquittal

standard, it appears that there is adequate evidence for the jury to have concluded that Tardy

acted deliberately and with the knowledge that his statement was false.  The jury was presented

with paychecks and computer employee records that showed that Tardy did indeed work class

coverage during the fall of 2002, and moreover that he was paid for those hours.  *See* Gov't Ex.

25-0001 (computer employee record for Walter Tardy for payments dated Jan. 1, 2003); Gov't

Ex. 26-0001 (corresponding paycheck for Walter Tardy dated Jan. 10, 2003).  Testimony

similarly showed that Tardy was paid for overtime hours in the spring of 2002 as well.  *See* Trial

Transcript, Oct. 5, 2007 (Rec. Doc. 222) at p. 33, line 14-20.  Tardy apparently received payment

for 190 hours of work for each spring and fall semester of 2002, an amount that is highly

unlikely to be forgotten.  Considering that no evidence was presented that refuted these forms,

the jury could have concluded that he knew that his statement was false when he made it.

Therefore, this Court cannot disturb his conviction on this ground.


### 2.  *Failure to Prove the "In Truth and In Fact" Clause of Indictment*

The Court turns to the Defendant's contention that the Government's failure to prove

which semester he received the alleged fraudulent payments is a defect in his conviction.  As a

premise, the Fifth Circuit has established that "when the government chooses to specifically

charge the manner in which the defendant's statement is false, the government should be

required to prove that it is untruthful for that reason."  *United States v. Hoover*, 467 F.3d 496

(5th Cir. 2006); *see also United States v. Baker*, 227 F.3d 955, 961 (7th Cir. 2000) ("It is true

that if an indictment makes a fact or a manner of committing an offense material to that offense,

that fact or manner must be proven, not a substantially different one.").  This statement of law is

based on *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), in which the Supreme Court invalidated a defendant's Hobbs Act conviction for interfering with interstate commerce of sand where the trial court allowed the jury to convict on the basis of the defendant's interference with importation of steel instead.  *Id.* at 219, 80 S.Ct. at 274.

In *United States v. Hoover*, the Fifth Circuit considered a defendant who had been employed at a car dealership and had been convicted of one count of false statements specifically concerning "double floorplanning" or "double flooring."  *Hoover*, 467 F.3d at 497.  These terms refer to "an illegal practice whereby a single vehicle is used as collateral for more than one loan."  *Id.*  The indictment had alleged that the defendant had lied to a federal agent when he stated that only one person had ever told him about the problem of double-flooring, when "in truth and in fact . . . more than one individual told him about double flooring."  *Id.* at 500.  The trial judge, however, gave the jury a generic intent instruction that simply required that jury to find that the defendant knew that his statement was false, instead of specifically instructing the jury that they must find that the defendant lied because more than one person had told him about double flooring.  *Id.*

The Fifth Circuit reversed the defendant's false statement conviction.  First, it noted that, under the Supreme Court's *Stirone* decision, "when the government chooses to specifically charge the manner in which the defendant's statement is false, the government should be required to prove that it is untruthful for that reason."  *Id.* at 502 (citing *Stirone*, 361 U.S. at 219, 80 S. Ct 270).  The court reasoned that the jury instructions could have allowed a conviction "by showing that [the defendant] knew that his statement was false for any reason, rather than being limited to the reason provided in the indictment," and it concluded that this prejudiced the

defendant because he "may have reasonably relied on the indictment and only prepared a defense that only one person had told him about the double flooring of vehicles, and, therefore, he did not knowingly make a false statement." *Id.* at 502. Finding that the jury instructions thus amounted to a constructive amendment, the Fifth Circuit reversed for a new trial. *Id.*

In the present case, the indictment states that Tardy's statement was false because "in truth and in fact TARDY was the recipient of fraudulent pay for inflated hours for the first semester of 2002, due to fraudulently altered class coverage forms."  Indictment at 15. Following *Hoover*, this Court must determine whether the Government properly proved the "in truth and in fact" clause of the relevant false statement count, Count 10.  The Government failed to prove this clause.  During trial the Government did present evidence that Tardy may have received fraudulent pay due to fraudulently altered class coverage forms for the spring semester of 2002.  Specifically, this evidence included an SPC-7 forms, used to track overtime pay for para-educators substituting for teachers.  The Government presented a form that had only been signed by the principal of Fannie C. Williams School on May 22, 2002, and this form did not list Walter Tardy as a teacher receiving remuneration.  Gov't Ex. 05-008.  The Government also presented a copy of the same form that had also been signed by the Cluster Executive Director for the Orleans Parish School Board on May 30, 2002; this form *did* list Walter Tardy as receiving payment of $1,520.00 for 190 hours of class coverage.  Gov't Ex. 05-0004.  This discrepancy suggests that the form was altered between the principal's affixing of her signature and the Cluster Executive Director's approval.  This evidence could form the basis of a conviction that Walter Tardy had received fraudulent pay due to fraudulently altered class coverage forms during the spring semester of 2002.

11

However, the Government did not present evidence that Tardy had benefitted from any forms being altered in the fall semester of 2002.  The Government only points to two pieces of evidence: a paycheck and a computer screen shot of an employee record that showed that Tardy did indeed work class coverage during the fall semester of 2002 and that he was paid for those hours.  *See* Gov't Ex. 25-0001 (computer employee record for Walter Tardy for payments dated Jan. 1, 2003); Gov't Ex. 26-0001 (corresponding paycheck for Walter Tardy dated Jan. 10, 2003).  Special Agent Hultz gave testimony that Tardy "should not have received any [class coverage] hours" for the fall semester of 2002.  *See* Trial Transcript, Oct. 5, 2007 (Rec. Doc. 222) at p. 33, line 5-13.  None of the evidence proves, however, that Tardy received fraudulent pay in the fall semester of 2002 due to due to fraudulently altered class coverage forms.

The distinction between the evidence presented for the fall semester of 2002 and the spring semester of 2002 is critical because Count 10 alleges that Tardy stated that he did not receive class coverage hours for the "first semester of 2002."  Nowhere in the indictment or in the evidence presented at trial does the Government define the "first semester of 2002."  The term "first semester of 2002" could refer to either the first semester of the *calendar* year 2002 (meaning the spring semester of 2002), or the first semester of the *school* year starting in 2002 (meaning the fall semester of 2002).  The Court requested further briefing on this issue, specifically regarding whether any witness or evidence defined the "first semester of 2002" during trial.  However, the Government was unable to point to any evidence adduced during trial that defines the first semester of 2002 as either the spring or fall semester.  The Government contends that the "first semester of 2002" refers to the fall semester, the semester that appears to suffer from a lack of evidence.  Had the Government presented evidence proving that Tardy

12

received fraudulent pay via fraudulently altered class coverage forms in both fall and spring 2002 semesters, then it appears that the failure to define "first semester of 2002" would be harmless error.  However, viewing the evidence in the light most favorable to the verdict, the Government failed to prove the "in truth and in fact" clause for the fall semester of 2002, while adequately proving this clause for the spring semester of 2002.  As a result, the failure to define the "first semester of 2002" becomes fatal to the Government's case because it is a failure to fully prove the "in truth and in fact" clause.  Therefore, this Court will grant the motion for acquittal for Count 10.

### 3.  Other Grounds for Acquittal Based on the Insufficiency of the Evidence

Defendant Tardy also claims that the evidence introduced by the Government was insufficient to convict him on four other grounds:  (1) the evidence showed that Tardy's alleged false statement "was made to only one agent, instead of two more 'agents;'" (2) there was "no evidence that Tardy referred to class coverage forms while making the allegedly false statement;" (3) the jury found that Tardy did not receive fraudulent pay for inflated hours in any semester, and therefore he cannot be convicted of stating that he did not receive any payments for class coverage hours, and (4) the Government only presented evidence that Tardy lied about receiving class coverage hours, while the indictment charges that he lied about receiving fraudulent pay for class coverage hours, the difference being pay versus hours.

As stated earlier, in evaluating the sufficiency of the evidence, this Court must affirm the verdict "if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt, viewing the evidence in the light most

favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict." *Burns*, 162 F.3d at 847, *quoting Myers*, 104 F.3d at 78.  Here, there is no element of this offense that required the Government to prove that the Defendant made his statement to two or more agents, therefore the Government did not have to prove that more that two agents were indeed present when the Defendant made his false statement.  The Government did not have to prove that Tardy referred to class coverage forms, as this portion of the indictment merely gave context to the alleged false statement.  Likewise, the indictment states that Tardy received "fraudulent pay for inflated hours," and the evidence showed that he apparently received some pay for coverage hours for both semesters of 2002 (see discussion *supra*).  Insofar as the Government allegedly failed to prove that these payments were "due to fraudulently altered class coverage forms," the Court's previous discussion indicates that evidence was presented that at least one class form may have been forged.  This point of error, standing on its own, does not warrant an acquittal.

Tardy lastly claims that the jury acquitted him on the other substantive counts, and therefore this Court must acquit him of the false statements count that was fundamentally based on the substantive counts.  As noted above, in evaluating the evidence that was adduced at trial, this Court finds it entirely plausible that the jury found that Tardy did receive some fraudulent pay through inflated hours, even if he was in some way entitled to some payment under his labor contract.  Tardy's acquittal on the other substantive counts does not impact his conviction here, as it is still possible for the jury to convict him of making a false statement regarding these fraudulent payments.  The Supreme Court has explained that acquittal is not appropriate simply due to inconsistent verdicts, as such verdicts "may be the result of lenity" by the jury.  *United*

14

*States v. Powell*, 469 U.S. 57, 66, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984). The correct protection against any error or prejudice affecting the defendant is "by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts." *Id.* at 67, 105 S.Ct. at 478. This Court's independent review has found one point of error warranting acquittal. All others are insufficient to merit a reversal of the jury's verdict.

To sum, this Court grants Defendant Tardy's motion for acquittal on the ground that the Government failed to prove the "in truth and in fact" clause because it did not define the "first semester of 2002" as the fall or spring semester of 2002 and accordingly prove that Tardy received fraudulent pay due to fraudulently completed class coverage forms for that semester. Otherwise, this Court denies the motion for acquittal on all other grounds.


B.  Motion for New Trial

Having determined that Defendant Walter Tardy is entitled to acquittal on one point of error, this Court notes that its evaluation of motion is not complete because, pursuant to Rule 29, in any case where the trial court grants a defendant's motion for acquittal after a guilty verdict, it must also conditionally rule on whether a new trial should be granted if the judgment of acquittal is overturned and "specify the reasons for that determination." Fed. R. Crim. P. 29(d)(1). This Court will apply the Rule 33 standard for a new trial, under which "[t]he trial judge may weigh the evidence and may assess the credibility of the witnesses." *United States v. Robertson*, 110 F.3d 1113, 1117 (5th Cir. 2007).


*1.  Alleged Solicitation of False Testimony by Prosecutors*

The defendant seeks a new trial based on prosecutorial misconduct, alleging that prosecutors improperly solicited Special Agent Hultz's testimony regarding an incorrect phone number allegedly given by the defendant.  Even if this Court were to presume that the prosecutors actions upon this issue were improper, it would not reach the level of misconduct that is required to mandate a new trial.  "When evaluating a claim of prosecutorial misconduct, we first ask whether the prosecutor's remarks were improper, and if so, whether they 'prejudicially affected the substantive rights of the defendant.'"  *United States v. Jimenez*, 509 F.3d 682, 691 (5th Cir. 2007) (quoting *United States v. Wyly*, 193 F.3d 289, 298-99 (5th Cir. 1999)).  "To warrant a new trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'"  *Id.* (quoting *Wyly*, 193 F.3d at 299).  The Court will apply the Rule 33 standard for a new trial.

Here, it appears that the prosecutor's remarks were not improper.  A review of the transcript reveals that Special Agent Hultz could not precisely tell why the phone number was incorrect, but simply suggested that she received the phone number, along with the rest of her information, from the person being interviewed.[5]  This line of questioning on redirect was in

---

[5]The relevant transcript section follows:

Q:  Okay.  Do you recall Mr. Wall [Tardy's defense attorney] asking you the question about the phone number that's down there for Mr. Tardy?
A:  Yes.
Q:  Okay.  And what was your answer?
A:  I read the telephone number on the 302.
Q:  Okay, all right.  Now, if in fact that is the wrong phone number; do you have any explanation for that?
A:  No.
. . .
Q:  Review that document, if you would, and tell me if there are any other errors in it.

response to cross-examination by the defendant's attorney, who elicited the fact that the phone number on the defendant's FBI 302 interview form was incorrect. The defendant proposes that prosecutors knew that the error on the form was Special Agent Hultz's because the same phone number (and thus the same error) was written on 302 interview forms from interviews with other defendants. The Defendant's claim requires this Court to presume that prosecutors knew that the error occurred on two other FBI 302 forms, among the numerous exhibits used in this trial. *See United States v. Barham*, 595 F.2d 231, 240 (5th Cir 1979), *citing Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L. Ed. 2d 1217 (1959) (holding that prosecutor cannot obtain conviction with the aid of false testimony where the prosecutor knows such testimony is false). Moreover, any prejudice was minimal as Hultz did not make an outright accusal that Tardy had lied, but simply said that the phone number on the interview form likely came from Tardy. It appears much more plausible that the school's phone number would not be a material fact that would be worth lying about, particularly as all of the defendants likely knew that Special Agent Hultz would easily have access to such a picayune piece of information as the school's telephone

---

A: (Witness examines document.)  No.
Q: No?
A: No.
Q: Okay.  Where do you usually get the information that you put in a 302?
A: (No response)
Q: For example, the Social Security Number?
A: The Social Security Number; it's either provided by the - - it's provided by Mr. Tardy.
Q: By the witness you're interviewing?
A: Correct.
Q: And the same with the telephone number?
A: Correct.

Trial Transcript at 216-17, Oct. 9, 2007 (Rec. Doc. 223).

number.[6]  The much more feasible explanation for the discrepancy is human error, especially

considering that phone numbers by their nature are much more easily confused than other facts.

Defense counsel also could have seized upon the various FBI 302 forms earlier during cross

examination, and possibly could have argued to the jury that Special Agent Hultz is prone to

making mistakes.  Thus, any prejudice against the Defendant was at best minimal and could have

been turned to the Defendant's advantage by his counsel.  Even if any prejudice did result, it

most certainly did not permeate the entire trial and impact the result as it appears only once in

the transcript and never was mentioned later during the trial.[7]  *See United States v. Beckett*, 706

F.2d 519, 520 (5th Cir. 1983) ("Prosecutorial misconduct, fortunately occurring only

occasionally, mars any trial in which it occurs and gives grounds for appeal.  But a conviction

should not be set aside if the prosecutor's conduct, however, wrongful, did not in fact contribute

to the guilty verdict and was, therefore, legally harmless."); *see also United States v. Bermea*, 30

F.3d 1539, 1563-66 (5th Cir. 1994) (holding that prosecutor's allegedly improper closing

arguments regarding burden of proof, defendants' failure to testify, and other allegations did not

case "serious doubt upon the correctness of the jury verdict or the fairness of the trial").  This

ground for a new trial, therefore, is denied.

---

[6]It is well-noted that the Defendant's counsel subjected Special Agent Hultz to a
thorough cross-examination that filled nearly 50 pages of transcript.  Trial Transcript at 164-212,
Oct. 9, 2007 (Rec. Doc. 223). More pointedly, the phone number discrepancy raised herein was
the last question posed by defense counsel, and indeed from the transcript it appears he nearly
forgot to ask it.  *See* Trial Transcript at 208, lines 16-17, Oct. 9, 2007 (Rec. Doc. 223).  This fact
simply weighs in favor of this Court's finding that this discrepancy was not of great probative
weight to Mr. Tardy's defense.

[7]The Court notes that the Defendant has only pointed out to this one instance of alleged
misconduct regarding the incorrect telephone number in his briefs.

*2. Constructive Amendments and Material Variances*

Defendant Tardy claims that he is entitled to a new trial because several material variances or constructive amendments occurred, to wit:  (1) Tardy made his statement to only one agent, instead of "agents" of the FBI as alleged; (2) the Government's evidence did not identify which class forms he referred to in making his false statement, where the indictment indicated that he referred to class coverage forms; (3) the evidence established that Tardy was not "in truth and in fact" the recipient of fraudulent pay for inflated hours due to fraudulently altered class coverage forms; (4) Hultz testified that Tardy said that he did not receive class coverage hours, as opposed to fraudulent payment of class coverage hours; and (5) the reference in the indictment that Tardy referred to the "first semester" of 2002 is ambiguous as it could refer to the spring semester of 2002 or the fall semester of 2002.

Judge Wisdom, writing for the court in *United States v. Young*, 730 F.2d 221 (5th Cir. 1984), described the law of variances and constructive amendments as follows:

> It is a long-established principle of our criminal justice system that, after an indictment has been returned, its charges may not be broadened through amendment except by the grand jury itself. *See Ex parte Bain,* 1887, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849. In *Stirone v. United States,* 1960, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, a leading case, the Supreme Court recognized that a trial court's amendment of the indictment need not be explicit to constitute reversible error, but that it may be implicit or constructive. *Stirone* involved a conviction under the Hobbs Act, 18 U.S.C.A. § 1951 (1970). The indictment charged the defendant with obstructing the interstate movement of sand brought into Pennsylvania. The trial judge allowed the defendant's guilt to be based upon a finding that the defendant had interfered with the shipment of steel from Pennsylvania to other states. Stating that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him", 361 U.S. at 217, 80 S.Ct. at 273, the Supreme Court overturned the conviction:
>
> > "While there was a variance in the sense of a variation between pleading and proof, that variation here destroyed the defendant's substantial right to be tried only on charges presented in an

> indictment returned by a grand jury.... [W]hen only one particular
> kind of commerce is charged to have been burdened a conviction
> must rest on that charge and not another, even though it be
> assumed that under an indictment drawn in general terms a
> conviction might rest upon a showing that commerce of one kind
> or another had been burdened."

*Id.* at 217-18, 80 S.Ct. at 273-74.

> *Stirone* requires that courts distinguish between constructive amendments
> of the indictment, which are reversible *per se,* and variances between indictment
> and proof, which are evaluated under the harmless error doctrine. The accepted
> test is that a constructive amendment of the indictment occurs when the jury is
> permitted to convict the defendant upon a factual basis that effectively modifies
> an essential element of the offense charged. *See United States v. Salinas* (Salinas
> II), 5 Cir.1981, 654 F.2d 319, 324, *overruled in part en banc on other grounds,*
> *United States v. Adamson,* 5 Cir.1983, 700 F.2d 953, 965 n. 18; *United States v.*
> *Ylda,* 5 Cir.1981 (per curiam), 653 F.2d 912, 914; *United States v. Salinas*
> (Salinas I), 5 Cir.1979, 601 F.2d 1279, 1282; *United States v. New Buffalo*
> *Amusement Corp.,* 2 Cir.1979, 600 F.2d 368, 381 (Oakes, J., concurring); *United*
> *States v. Crocker,* 3 Cir.1977, 568 F.2d 1049, 1059-60. In such cases, reversal is
> automatic, because the defendant may have been convicted on a ground not
> charged in the indictment. *See Stirone,* 361 U.S. at 217, 219, 80 S.Ct. at 273, 274;
> *Ylda,* 653 F.2d at 914; *Salinas I,* 601 F.2d at 1290. If, on the other hand, the
> variation between proof and indictment does not effectively modify an essential
> element of the offense charged, "the trial court's refusal to restrict the jury charge
> to the words of the indictment is merely another of the flaws in trial that mar its
> perfection but do not prejudice the defendant". *Ylda,* 653 F.2d at 914 (footnote
> omitted).

*Young*, 730 F.2d at 223; *see United States v. Monsivais*, 5 F.3d 1495, 1495 (5th Cir. 1993)

(unpublished opinion) (citing *Young*); *United States v. Adams*, 778 F.2d 1117, 1122 (5th Cir.

1985) (quoting *Young*). Similarly, the Ninth Circuit has described the difference between a

material variance and a constructive amendment:

> An *amendment* of the indictment occurs when the charging terms of the
> indictment are altered, either literally or in effect, by the prosecutor or a court
> after the grand jury has last passed upon them. A *variance* occurs when the
> charging terms of the indictment are left unaltered, but the evidence offered at
> trial proves facts materially different from those alleged in the indictment.

*United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (emphasis in original) (citations

omitted).  Some courts have described the difference between variances and constructive

amendments as "sketchy," noting that the distinction "seems to be simply a difference in the

degree of deviation between the evidence and the indictment, rather than a difference in kind."[8]

1 Charles Alan Wright, et al., Federal Practice & Procedure Criminal § 128 (3d ed. 2007), *citing*

*United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006) (describing the two concepts as

"closely related" and the difference "sketchy"); *United States v. Hartz*, 458 F.3d 1011, 1020 (9th

Cir. 2006) (noting the line between material variances and constructive amendments is "at times

difficult to draw"); *United States v. Daraio*, 445 F.3d 253, 261 (3d Cir. 2006) (same).

        The distinction between constructive amendments and variances, while perhaps murky,

can be important because a variance "is permissible unless prejudice is shown by the defendant,"

while a constructive amendment is "fatal without regard to prejudice."  *United States v.

Mueffelman*, 470 F.3d 33, 37-38 (1st Cir. 2006); *see Young*, 730 F.2d at 223 (noting that

"constructive amendments of the indictment . . . are reversible *per se*, and variances . . . are

---

        [8]Indeed, in the seminal Supreme Court case of *Stirone v. United States*, discussed above,
the Supreme Court described the constructive amendment in that matter thus:

>        While there was a variance in the sense of a variation between pleading and proof,
>        that variation here destroyed the defendant's substantial right to be tried only on
>        charges presented in an indictment returned by a grand jury.  Deprivation of such
>        a basic right is far too serious to be treated as nothing more than a variance and
>        then dismissed as harmless error.

*Stirone*, 361 U.S. at 217, 80 S.Ct. at 273.  The Supreme Court's description of a constructive
amendment as a variance suggests that a constructive amendment is simply a variance that is of
such magnitude that prejudice need not be considered.  The discord and confusion among courts
over constructive amendments and variances possibly could be solved, therefore, by giving these
concepts one shibboleth under which judges must only evaluate the differences between
indictment and proof and the resulting prejudice.

21

evaluated under the harmless error doctrine."). Thus, where a court has found constructive amendment, the defendant is immediately granted relief without regard to prejudice.[9] However, the courts of this circuit will not grant a new trial for a variance unless "1) the defendant establishes that the evidence the government offered at trial varied from what the government alleged in the indictment, and 2) the variance prejudiced the defendant's substantial rights." *United States v. Puig-Infante*, 19 F.3d 929, 935-36 (5th Cir. 1994), *quoting United States v. Jackson*, 978 F.2d 903, 911 (5th Cir. 1992). The prejudice caused by a variance is measured by "whether the indictment, assuming it has otherwise alleged the elements of the offense, has so informed a defendant that he can prepare his defense without surprise and has protected him against a second prosecution for the same offenses." *United States v. Lokey*, 945 F.2d 825, 834 (5th Cir. 1991), *quoting United States v. Cochran*, 697 F.2d 600, 604 (5th Cir. 1983); *see Stirone*, 361 U.S. at 218, 80 S. Ct. at 273 ("The very purpose of the requirement that a man is indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens."); *United States v. Spurlock*, 214 Fed. Appx. 382, 387 n.5 (5th Cir. 2007) (unpublished

---

[9]The kind of relief granted for a constructive amendment can vary, however. The Fifth Circuit, in a lengthy footnote in *United States v. Chambers*, explained:

> Where the indictment has been constructively amended, by prosecution evidence wholly outside the proper scope of the indictment and/or by a jury charge authorizing a verdict of guilty thereon, but there is evidence within the proper scope of the indictment which supports the verdict, then the normal remedy is to reverse for a new trial.

*United States v. Chambers*, 408 F.3d 237, 247 n.6 (5th Cir. 2005), *citing Stirone*, 361 U.S. 212, 80 S.Ct. 270. However, in *Chambers*, the Court found that, because there was no evidence supporting the element that had been constructively amended "on the factual basis alleged in the indictment," the Fifth Circuit found that a judgment of acquittal should have been entered. *Chambers*, 408 F.3d at 237 n.6.

opinion) ("A fatal variance only occurs when the indictment does not provide a defendant sufficient notice of the evidence introduced at trial.").

In the present matter, it is clear that a majority of Tardy's claims are baseless.  Unlike *Stirone*, the difference between making a false statement to one FBI agent (as adduced at trial) instead of more than one (as alleged in the indictment) did not "effectively modify an essential element of the offense charged."  *Young*, 730 F.2d at 223.  The elements of the crime charged did not change simply because one agent was present instead of two.  Furthermore, Tardy's allegation that the Government failed to produce evidence that he referred to class forms is not a constructive amendment, as again that portion of the false statement is not an element of the crime.  At best, the indictment's language that Tardy made his statements "referring to the class coverage forms" is needless superfluity and could not reach the level of a constructive amendment.  These grounds for a constructive amendment moreover could not amount to a variance.  Despite any alleged difference between the indictment and proof, Tardy was afforded ample notice of what his false statement was and when he made the alleged false statement. Regardless of how many agents were present, and whether he referred to class coverage forms, Tardy knew what the allegation was and is protected from double jeopardy, therefore no prejudice resulted.

Defendant Tardy also claims a constructive amendment or variance resulted when Special Agent Hultz testified regarding Tardy's false statement.  During her testimony, Special Agent Hultz explained, "Mr. Tardy stated he never received class coverage hours for - - I mean, excuse me, class coverage hours for the first semester of 2002."  Tardy points out that, in contrast with this statement, the indictment reads, "TARDY stated that he never received any

*payment* from class coverage hours in the first semester of 2002."  Indictment at 14-15 (emphasis

added).  This difference again does not amount to a constitutional violation.  Regardless of

whether the statement concerned receiving class coverage hours or payment for class coverage

hours, the nucleus of the false statement still remained.  Because a person receiving class

coverage hours would naturally be paid for those hours, any difference is meaningless because

Tardy would still be lying about being paid for hours that he allegedly did not work.[10]

Therefore, no element of the crime had changed, and Tardy was placed on notice regarding what

the false statement was, and he faces no threat of double jeopardy due to any change in evidence.

However, this Court does finds that a variance did occur regarding the timing of the

allegedly fraudulent payments.  As stated in the discussion *supra* in which this Court granted the

Defendant's motion for acquittal, there was a deviation between the allegations in Count 10 of

the indictment and the evidence adduced at trial.  Consistent with *Stirone* and its progeny, this

Court can order a new trial where the evidence at trial allows the jury to convict on a basis other

than that charged in the indictment.  Again, this Court is guided by the Fifth Circuit's decision in

*United States v. Hoover*, 467 F.3d 496, 502 (5th Cir. 2006), in which the appellate court reversed

a conviction on the basis of a constructive amendment where the district court instructed the jury

that they could convict the defendant for making a false statement on any basis, instead of the

---

[10]The defense claims that "[c]lass coverage hours can be worked without receiving payment for them, as demonstrated by the fact that Mr. Tardy worked 1,142 hours in the Fall 2001 semester but received no payment."  Sur-reply at 2.  However, there is no evidentiary support for this allegation proffered by the defense, and the much more reasonable inference is that where a person works coverage hours, he is paid for those hours.  *See United States v. Hoover*, 467 F.3d 496, 499-500 (5th Cir. 2006) (affirming false statement count where indictment stated that persons had "complained" to defendant, but evidence proved that persons "told" defendant about problem, and finding that the terms contextually were synonymous).

basis of the "in truth and in fact" clause offered in the indictment.  In the present matter, the Defendant was not convicted on a basis other than that in the indictment because of this Court's jury instruction, and the Defendant did not raise any objection to the jury charges on this point. Therefore, a constructive amendment did not occur.  *See United States v. Griffin*, 324 F.3d 330, 356 (5th Cir. 2003) (finding constructive amendment where district court's jury instructions expanded the basis upon which the defendant was convicted beyond the indictment).  However, a material variance can occur where "1) the defendant establishes that the evidence the government offered at trial varied from what the government alleged in the indictment, and 2) the variance prejudiced the defendant's substantial rights."  *Puig-Infante*, 19 F.3d at 935-36, *quoting Jackson*, 978 F.2d at 911.  This Court finds that, substantially on the same basis upon which it granted acquittal *supra*, likewise a material variance occurred here.  The evidence presented at trial, namely the testimony and SPC-7 forms from the spring semester of 2002, allowed the Defendant to be convicted on a basis other than that alleged in the indictment.  A significant reason for this error is due to the vagueness of the term "the first semester of 2002" and the Government's failure to define that term.  As a result, the Defendant was potentially convicted of making a false statement in reference to the spring semester of 2002, when the Defendant's actual statement referred to the fall semester of 2002, a semester for which the Government did not present any evidence that the Defendant received fraudulent pay due to fraudulently completed class coverage forms.  By only presenting evidence that allowed the jury to convict on a basis other than the "in truth and in fact" clause of the indictment, the Government caused a variance on par with the constructive amendment in *Hoover*.

Moreover, this material variance prejudiced the Defendant.  As stated above, prejudice is

25

measured by "whether the indictment, assuming it has otherwise alleged the elements of the offense, has so informed a defendant that he can prepare his defense without surprise and has protected him against a second prosecution for the same offenses." *Lokey*, 945 F.2d at 834, *quoting Cochran*, 697 F.2d at 604.  In *Young*, 730 F.2d at 222, discussed *supra*, the Fifth Circuit did not find that a variance prejudiced a defendant where the indictment alleged that the defendant had received a firearm in interstate commerce, but the evidence at trial suggested that the firearm had been shipped directly from a foreign country instead of another state.  The Fifth Circuit reasoned that no prejudice resulted because the Defendant received the relevant investigatory report long before trial commenced, suggesting no surprise, and that foreign and interstate commerce a "unitary concept" under the law, thus preventing a second consecutive prosecution for the same crime.  *Id.* at 225.  Here, the Defendant suffered surprise here because the evidence presented at trial allowed the Defendant to be convicted for either the spring or fall semester of 2002.  This evidence was likely included in substantial boxes of documents that were being delivered to defense parties only weeks prior to trial, and the defense could not have had any other notice of how the Government intended to prove the timing of the alleged fraudulent payments.  Moreover, Defendant Tardy was not properly protected from double jeopardy.  Indeed, this Court can fathom that this variance could permit consecutive prosecutions, wherein the Government would claim in the second trial that the "first semester of 2002" referred to the fall semester instead of the spring semester, or vice versa.  Accordingly, unlike *Young*, the Defendant here suffered prejudice due to the material variance between the indictment and proof, and therefore this Court conditionally grants the Defendant's motion for a new trial.

## III.  CONCLUSION

For the reasons set forth herein, accordingly

**IT IS ORDERED** that Defendant Walter Tardy's Motion for Acquittal, or in the Alternative a New Trial, is **GRANTED**, and

**IT IS FURTHER ORDERED** that the Defendant is **ACQUITTED** of Count 10 of the Second Superseding Indictment, and

**IT IS FURTHER ORDERED** that, conditionally, the Defendant's conviction on Count 10 of the Second Superseding Indictment be **VACATED**, and that the Defendant receive a **NEW TRIAL** on Count 10.

New Orleans, Louisiana, this ___8th___ day of April, 2008.

_____
        **STANWOOD R. DUVAL, JR.**
        **UNITED STATES DISTRICT JUDGE**

27